UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **NEPHROLOGY & HYPERTENSION SPECIALISTS, LLC,**   An Ohio limited liability company   501 West Schrock Road, Suite 103   Westerville, OH  43018, <br><br>            Plaintiff, <br><br>v. <br><br>**FRESENIUS MEDICAL CARE HOLDINGS, INC.,**   A New York corporation   920 Winter Street   Waltham, MA  02451, <br><br>           Defendant. | <br><br><br><br><br><br><br><br>**CIVIL ACTION NO. 2:09 cv 781** |

## COMPLAINT AND JURY DEMAND

Plaintiff Nephrology & Hypertension Specialists, LLC (hereinafter "NHS"), for its Complaint against Defendant Fresenius Medical Care Holdings, Inc. (hereinafter "Fresenius"), alleges:

### The Parties And Jurisdiction

1.   NHS is a limited liability company organized and existing under the laws of the State of Ohio. All of the members of NHS are citizens of the State of Ohio and of no other state. As such, and for the purposes of 28 U.S.C. § 1332, NHS is a citizen of the State of Ohio and of no other state.

2.      Fresenius is a corporation organized and existing under the laws of the State of New York, and it maintains its sole principal place of business in the Commonwealth of Massachusetts.

3.      This Court has subject matter jurisdiction over this action pursuant to the provisions of 28 U.S.C. § 1332 because it is a controversy between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

## Count I

4.      Through its physician members, Dr. Michael L. Sobel and Dr. Sunkireddy B. Sreedevi, NHS is engaged in the practice of medicine in Franklin, Delaware, and Union Counties, Ohio.  Their primary medical specialty is the care and treatment of patients with end stage renal disease and other ailments of the kidneys.  Many of their patients require dialysis as part of their treatment regimen.

5.      Fresenius, either directly or through subsidiaries, owns and operates approximately 1,500 dialysis clinics throughout North America.  It is a subsidiary of Fresenius Medical Care AG Co. KGaA, a German partnership limited by shares (hereinafter "FMC").  Through Fresenius and other subsidiaries, FMC holds itself out as "the world's largest integrated provider of products and services for individuals undergoing dialysis."

6.      Until on or about March 31, 2006, the Renal Care Group, Inc., a Delaware corporation (hereinafter "RCG"), was a competitor of Fresenius in the United States.  RCG at all times relevant to this action had more than a majority ownership interest in and control over Columbus Area Renal Alliance, LLC, a Delaware limited liability company (hereinafter "CARA").

7. In late 2004, CARA and NHS entered into an agreement for the development and operation of a dialysis clinic to be located in the vicinity of St. Ann's Hospital in Westerville, Ohio. NHS and CARA agreed that NHS would own 20% of the clinic and CARA would own 80%. They further agreed that NHS would be the dialysis clinic's Medical Director for at least a ten year period.

8. Pursuant to the aforementioned agreement, NHS and CARA entered into a Limited Liability Company Agreement (hereinafter the "Limited Liability Company Agreement") whereby they formed a Delaware limited liability company named Columbus Renal Care Group, LLC (hereinafter "Columbus Renal"), of which NHS owned 20% and CARA 80%. A complete copy of said Limited Liability Company Agreement is attached hereto as Exhibit A.

9. Columbus Renal, through the actions of NHS and CARA, and in accordance with the Limited Liability Company Agreement, successfully developed and organized a dialysis clinic located at 275 West Schrock Road in Westerville, Ohio, less than one mile from St. Ann's Hospital (hereinafter "the Columbus Renal Clinic"). In addition, Columbus Renal entered into a written agreement with NHS whereby the latter was retained as the Medical Director for the Columbus Renal Clinic for a period of at least ten years. A complete and accurate copy of the aforementioned agreement is attached hereto as Exhibit B (hereinafter the "Medical Director Agreement").

10. By the spring of 2006, the Columbus Renal Clinic was ready to open, to operate, and to admit patients.

11. On or about March 31, 2006, FMC acquired all of the issued and outstanding shares of stock of RCG and, thereby, became the indirect owner of CARA and the indirect owner

of 80% of Columbus Renal.  Shortly after FMC acquired RCG, Fresenius succeeded to all of RCG's business, including control over the Columbus Renal Clinic of which NHS owned 20% and for which it was the Medical Director.

12. Prior to FMC's acquisition of RCG, Fresenius, either directly or through one or more subsidiaries or affiliates, organized and developed a dialysis clinic located on the campus of St. Ann's Hospital in Westerville, Ohio, less than one mile from the Columbus Renal Clinic (hereinafter the "Fresenius Clinic").  NHS had no ownership interest in, and was not the medical director of, the Fresenius Clinic.  The Fresenius and Columbus Renal Clinics would have been direct competitors if both had opened and operated.

13. In the spring of 2006, after FMC acquired RCG and Fresenius succeeded to all of RCG's business, Fresenius, with actual knowledge of NHS's agreements with CARA and NHS's 20% ownership interest in Columbus Renal, and without any right or privilege to do so, intentionally and maliciously prevented CARA and Columbus Renal from opening the Columbus Renal Clinic and prevented CARA from performing its agreements and continuing its business relationships with NHS for the operation of the Columbus Renal Clinic.

14. Fresenius purposefully interfered with NHS's contracts and business relationships with CARA as aforesaid, not for the protection or betterment of CARA, Columbus Renal, or the Columbus Renal Clinic, but for the promotion and improvement of the Fresenius Clinic in which NHS had no ownership interest.  Fresenius' prevention of the opening and operation of the Columbus Renal Clinic was wrongful and improper as to NHS and even as to CARA and Columbus Renal.

15. Fresenius' prevention of the opening of the Columbus Renal Clinic directly and proximately caused CARA to breach its agreements with NHS for the operation of a dialysis clinic in the vicinity of St. Ann's Hospital in Westerville, Ohio, and the termination of CARA's business relationships with NHS.  Because of Fresenius' wrongful actions as aforesaid, CARA completely repudiated and terminated its contracts and business relationships with NHS, and the Columbus Renal Clinic never opened or operated.

16. As a direct and proximate result of Fresenius' tortious interference with NHS's contractual and business relationships with CARA as aforesaid, NHS has been damaged in an amount exceeding $75,000.00, representing the loss of its ownership interest in Columbus Renal plus 20% of the profits it would have received from the operation of the Columbus Renal Clinic had Fresenius not prevented it from opening and operating.

17. NHS fully performed or, at all times, was ready, willing, and able to perform all of its obligations under its agreements with CARA.

## **Count II**

18. NHS repeats and realleges Paragraphs 1 through 17 of its Complaint as though fully set forth herein.

19. In the spring of 2006, after FMC acquired RCG and Fresenius succeeded to all of RCG's business, Fresenius, with actual knowledge of the Medical Director Agreement, and without any right or privilege to do so, intentionally and maliciously prevented Columbus Renal from performing the Medical Director Agreement.

20. Fresenius purposefully interfered with Columbus Renal's performance of the Medical Director Agreement as aforesaid, not for the protection or betterment of Columbus

Renal or the Columbus Renal Clinic, but for the promotion and improvement of the Fresenius Clinic of which NHS was not the Medical Director.  Fresenius' prevention of Columbus Renal's performance of the Medical Director Agreement was wrongful and improper as to NHS and even as to Columbus Renal.

21. Fresenius' prevention of the opening of the Columbus Renal Clinic directly and proximately caused Columbus Renal to breach the Medical Director Agreement and to terminate its business relationship with NHS.  Because of Fresenius' wrongful actions as aforesaid, Columbus Renal completely repudiated and terminated the Medical Director Agreement.

22. In June 2006, Fresenius and NHS entered into a written agreement compromising and settling all claims which NHS had against Fresenius and RCG for the breach and repudiation of the Medical Director Agreement, a complete and accurate copy of which is attached hereto as Exhibit C (hereinafter the "Settlement Agreement").

23. In the Settlement Agreement, Fresenius, among other things, granted NHS an option "to purchase, at fair market value, a 20 percent interest in the Fresenius Clinic … consistent with [Fresenius'] Joint Venture Policy" in return for NHS's not pursuing any claims against Fresenius or RCG regarding the Medical Director Agreement.

24. In the summer of 2006, NHS exercised the aforementioned option by notifying Fresenius that NHS was desirous of purchasing a 20 percent interest in the Fresenius Clinic at fair market value consistent with Fresenius' Joint Venture Policy.  Upon NHS's exercise of the aforementioned option, Fresenius became obligated to sell a 20 percent interest of the Fresenius Clinic to NHS consistent with Fresenius' Joint Venture Policy.

25. NHS has never pursued any claims against Fresenius or RCG regarding the Medical Director Agreement and has otherwise fully and completely performed all of its obligations under the Settlement Agreement.

26. Fresenius has failed and refused to sell NHS a 20 percent interest in the Fresenius Clinic consistent with its Joint Venture Policy and has, thereby, materially and substantially breached the Settlement Agreement.

27. As a direct and proximate result of the foregoing, NHS has been damaged in an amount exceeding $75,000.00, representing the loss of a 20 percent ownership interest in the Fresenius Clinic plus 20 percent of the profits it would have received from the operation of the Fresenius Clinic had Fresenius not materially and substantially breached the Settlement Agreement.

## Count III

28. NHS repeats and realleges Paragraphs 1 through 27 of its Complaint as though fully set forth herein.

29. In the Settlement Agreement, Fresenius also agreed "to partner with [NHS] to form a joint venture to develop, own and operate an outpatient dialysis facility in … Delaware, Ohio, the operations of which will be consistent with [Fresenius'] Joint Venture Policy."  In addition, Fresenius also agreed that NHS would be the Medical Director of the Delaware facility (hereinafter the "Delaware Clinic").

30. Subsequent to their execution of the Settlement Agreement, Fresenius and NHS jointly developed and established the Delaware Clinic.  The Delaware Clinic was opened by Fresenius and NHS on or about June 9, 2008 and has been operating continuously at 36 Troy

Road in Delaware, Ohio since that date. In accordance with the provisions of the Settlement Agreement, NHS has been the Medical Director of the Delaware Clinic since it opened. As part of their development, establishment, and operation of the Delaware Clinic, Fresenius and NHS agreed that NHS would have the right to purchase a 40 percent interest in the Delaware Clinic at fair market value.

31. In reliance upon Fresenius' promise to sell NHS a 40 percent interest in the Delaware Clinic at fair market value, NHS devoted substantial time and resources to the development, establishment, and operation of the Delaware Clinic and rejected a proposal by a competitor of Fresenius to partner with NHS to develop and operate an outpatient dialysis clinic in Delaware, Ohio.

32. NHS has never pursued any claims against Fresenius or RCG regarding the Medical Director Agreement and has otherwise fully and completely performed all of its obligations under the Settlement Agreement and its agreement with Fresenius for the development, establishment, and operation of the Delaware Clinic.

33. In breach of its agreements and promises to NHS, Fresenius has failed and refused to sell NHS a 40 percent interest in the Delaware Clinic consistent with its Joint Venture Policy.

34. As a direct and proximate result of the foregoing, NHS has been damaged in an amount exceeding $75,000.00, representing the loss of a 40 percent ownership interest in the Delaware Clinic plus 40 percent of the profits it would have received from the operation of the Delaware Clinic had Fresenius not materially and substantially breached its agreements and promises with NHS.

**WHEREFORE,** Plaintiff Nephrology & Hypertension Specialists, LLC, demands judgment against Defendant Fresenius Medical Care Holdings, Inc., in an amount exceeding $75,000.00, exclusive of interest and costs, representing the values of the proportionate interests in the dialysis clinics Fresenius prevented from opening or refused to sell to NHS, together with the profits resulting from such proportionate ownership, NHS's costs herein expended, and such other and further relief as the Court deems appropriate.

*Lawrence D. Walker*
Lawrence D. Walker, Trial Attorney
Ohio Bar No. 0012036
**TAFT STETTINIUS & HOLLISTER LLP**
21 East State Street, Suite 1200
Columbus, OH  43215-4221
Telephone:     (614) 221-2838
Facsimile:     (614) 221-2007
E-mail:        walker@taftlaw.com
Attorney for Plaintiff

## **JURY DEMAND**

Plaintiff Nephrology & Hypertension Specialists, LLC hereby demands a trial by jury of all claims, defenses, and issues in the above-entitled action which are so triable.

*Lawrence D. Walker*
Lawrence D. Walker, Trial Attorney
Ohio Bar No. 0012036
**TAFT STETTINIUS & HOLLISTER LLP**
21 East State Street, Suite 1200
Columbus, OH  43215-4221
Telephone:     (614) 221-2838
Facsimile:     (614) 221-2007
E-mail:        walker@taftlaw.com
Attorney for Plaintiff